IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| LAQUISHA SULLIVAN-ROBINSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:11CV00140 SWW |
| | * | |
| ARKANSAS PAROLE BOARD, ET AL., | * | |
| | * | |
| Defendants. | * | |

**Memorandum Opinion and Order**

Before the Court is defendants' motion to dismiss some of plaintiffs' claims. Plaintiff responded to the motion and defendants' filed a reply to the response. For the reasons stated below, the motion is granted in part and denied in part.

**Background**

Plaintiff has been employed by the Arkansas Parole Board ("Board") since April of 2006. In 2007, she requested medical leave under the Family and Medical Leave Act ("FMLA"). The Board denied her request, she appealed, and her request was upheld on appeal. Plaintiff complains that after she returned to work, she applied for at least two promotions that she did not receive. Further, she alleges that on August 25, 2010, separate defendant Jimmy Wallace, a Board Commissioner, commented to plaintiff and another employee that "All the women up here have nice bodies, I don't like big women . . . All of y'all are nice to look at; there is nothing wrong with nice eye candy around the office." Am. Comp. at ¶ 13. The next day, Wallace indicated to plaintiff that he wanted to see her tattoos. She showed her some of her visible tattoos but told him she had others that could not be seen. Plaintiff alleges Wallace indicated he

wanted to see the tattoo right above her breast. When she refused, Wallace responded: "Hell, you shouldn't have them if I can't see them." *Id.* at ¶ 14. Plaintiff says she told her immediate supervisor about Wallace's remarks and she advised plaintiff to file a grievance. On September 1, 2010, Wallace asked plaintiff for a translation of a tattoo on her arm. Plaintiff responded: "Love hurts." He commented: "The love I had last night didn't hurt." *Id.* at ¶ 16. The next day, plaintiff filed a grievance alleging sexual harassment resulting in a hostile work environment. *Id.* at ¶ 17.

Separate defendant Richard Mays, Jr., a Board commissioner, investigated plaintiff's grievance and determined that Wallace should be verbally counseled and required to attend a one-day seminar on sexual harassment. On November 12, 2010, separate defendant Leroy Brownlee, the chairman of the Board, ratified Mays' suggested resolution of the grievance. *Id.* at ¶¶ 18-20. Plaintiff alleges that even after Wallace attended the seminar, he continued to make sexually inappropriate comments in proximity to and within hearing range of plaintiff. She alleged that when an employee asked him how he was doing, Wallace responded: I'm good. Do you want to taste me and see?" Plaintiff said Wallace also referred to one of his hands as his "groping hand[]." *Id.* at ¶ 21.

Plaintiff complains defendants retaliated against her for filing the grievance against Wallace by denying her a promotion. In connection with that promotion, plaintiff claims that an unidentified commissioner made a comment that he did not think a single mother with two small children was a suitable candidate for the position. Plaintiff is a single mother with two small children.

On November 1, 2010, plaintiff filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC"), claiming sexual harassment. The EEOC issued a right-to-sue letter on November 9, 2010. Plaintiff filed a complaint in this Court in February 14, 2011. On the same day, she filed another charge of discrimination with the EEOC, alleging she did not receive the promotion in retaliation for filing her grievance and subsequent EEOC charge. The EEOC issued a right-to-sue letter on the retaliation charge on February 17, 2011, and plaintiff filed an amended complaint on April 15, 2011, alleging claims pursuant to 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e; the FMLA of 1993, as amended, 29 U.S.C. § 2601 *et seq*; and the Arkansas Civil Rights Act of 1993, § 16-123-101 *et seq* ("ACRA"). She sues the Board and each commissioner in his or her individual and official capacity, and seeks injunctive, declaratory, and compensatory relief.

Defendants move for dismissal of many of plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(1) or 12(b)(6). In response, plaintiff explains she is not pursuing a § 1983 claim against the Board, is not pursuing money damages against the official-capacity defendants under § 1983, is not pursuing a Title VII claim against the individual defendants, is not pursuing a FMLA claim, and is not pursuing a claim under the ACRA against the Board. The Court therefore addresses defendants' challenge to plaintiff's § 1983 sexual harassment claim against Wallace and her claim under the ACRA of retaliation against defendants in their individual capacities.

## Standard of Review

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). All facts alleged in the complaint will be

viewed by the Court in the light most favorable to the non-moving party, *McMorrow v. Little,* 434 (8th Cir.1997), and the complaint should not be dismissed if there are pled "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

## Discussion

Separate defendant Wallace moves for dismissal of plaintiff's sexual harassment claim, arguing she fails to state a viable claim for relief. He also asserts he is entitled to qualified immunity. The individual defendants move for dismissal on the basis that they have statutory immunity from plaintiff's ACRA retaliation claims against them in their individual capacities.

1.      Hostile Work Environment Sexual Harassment Claim

Sexual harassment claims brought under Title VII and § 1983 are analyzed under the same framework. *Chism v. Curtner*, 619 F.3d 979, 983 n. 3 (8th Cir. 2009). In order to prove a hostile work environment claim, plaintiff must show: 1) she was a member of a protected group; 2) the occurrence of unwelcome harassment, 3) a causal nexus between the harassment and her membership in the protected group; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Jenkins v. Winter,* 540 F.3d 742, 748 (8th Cir.2008).

> The standard for demonstrating a hostile work environment on the basis of sexual harassment is a demanding one. 'Title VII does not prohibit all verbal or physical harassment and [it] is not a general civility code for the American workplace.' Actionable conduct must therefore be extreme rather than merely rude or unpleasant. A plaintiff must establish that discriminatory intimidation, ridicule, and insult permeated the workplace. In determining whether a plaintiff has demonstrated a hostile work environment, we consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the plaintiff's job performance.

*Cross v. Prairie Meadows Racetrack and Casino*, 615 F.3d 977, 981 (8th Cir. 2010)(internal citations omitted).  "This is a high bar, and it requires a showing that the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Brannum v. Missouri Dep't of Corrections*, 518 F.3d 542, 548 (8th Cir. 2008)(internal citation and quotation omitted).  "A recurring theme to be derived from [Supreme Court] cases 'is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Id*. at 548 (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Defendants assert Wallace's conduct was not sufficiently severe or pervasive to constitute an actionable hostile work environment claim. After careful review, the Court agrees.

In *Duncan v. General Motors Corp*., 300 F.3d 928 (8th Cir. 2003), the plaintiff complained about a co-worker who, over a two-year period, requested a relationship with her; briefly touched her hand on four or five occasions; asked her to use his computer, which had a picture of a naked woman as the screen saver, to create a training document; asked the plaintiff to draw his planter, which was shaped like a slouched man wearing a sombrero, with a hole in the front of the man's pants that allowed a cactus to protrude; and kept a child's pacifier that was shaped like a penis in his office and showed it to the plaintiff on two occasions.  He, along with another employee, created and displayed a poster that portrayed the plaintiff as the president and CEO of the Man Hater's Club of America, and asked the plaintiff to type up a draft of a set of beliefs of the "He-Men Women Hater's Club."  The Eighth Circuit ultimately found that the defendant was entitled to judgment as a matter of law because the harassment did not amount to actionable harm under Title VII.  The Eighth Circuit said that while the actions directed at the

plaintiff "were boorish, chauvinistic, and decidedly immature," they did not create an objectively hostile work environment. *Id* at 935. The Eighth Circuit stated that the conditions the plaintiff endured were "offensive and disrespectful," but "were not so intolerable as to cause a reasonable person to resign." *Id*. at 935-36.

In *Sutherland v. Missouri Dep't of Corrections*, 580 F.3d 748 (8th Cir. 2009), the plaintiff alleged that during an encounter with a co-worker, the co-worker put his hand on her shoulder, told her "they would have fun" if the co-worker and the plaintiff worked together, and that he "would take care of her . . . if you know what [he] mean[s]." *Id*. at 750. The co-worker also began rubbing the plaintiff's arm and then proceeded to touch and grab her breast. *Id*. The Eighth Circuit held such conduct was not actionable harassment under Title VII.

Plaintiff argues her allegations are comparable to those set forth in *Wright v. Rolette County*, 417 F.3d 879 (8th Cir. 2005), which were held actionable. Wright, a Canadian citizen, served as an office deputy in the sheriff's department for approximately two years. She alleged that the use of vulgar and sexist language was a daily occurrence at the Sheriff's Office. Men in the office called her a "big-breasted Canadian secretary," a "dizzy bitch," and "Canadian bacon." Sheriff Sims referred to her as "Canadian bacon" at a Peace Officer's Association meeting, and all in attendance heard the comment. According to Wright, Sims repeatedly made comments about a "potty cam" when she returned from the restroom. Another time, Sims told Wright he could use a "blow job," and he made other comments to her about "rubbing [her] tits with toilet paper," referred to her vagina as a "snapper," stroked his mustache while telling Wright he was "clearing off her seat," and made comments about lesbian activity. *Id*. at 882-83. The court said: "Without belaboring the point, Sims made numerous other unwelcome comments of a

sexual nature that would be offensive to any reasonable person." *Id*. at 883.  In holding that Sims was not entitled to qualified immunity, the court found Sims harassed Wright "in an highly sexualized way.  He targeted Wright and made extremely vulgar, sexual comments about her, sometimes in front of her colleagues." *Id*. at 886.  The comments took place over a two year period. *Id*.

Here, plaintiff alleges Wallace made inappropriate statements to her three times over a two-week period.  She also alleges that at a later date she overheard two additional offensive comments Wallace made to another employee.  The Court finds as a matter of law that these allegations, while establishing conduct that was offensive, unprofessional, and boorish, fail to state a claim of hostile environment sexual harassment.

2.   Retaliation Claims under the ACRA

Plaintiff alleges the individual Board commissioners retaliated against her for "seeking relief for FMLA violations as well as continued retaliation in violation of Title VII." Am. Comp. at ¶ 9.  She claims she consistently received promotions until she filed "grievances about her employer's unlawful actions with respect to both FMLA and Title VII." *Id*. at ¶ 10.  Plaintiff complains she applied for at least two promotions after she returned to work from her FMLA leave.  She alleges she was qualified for those within-agency positions but was denied the promotions.  Plaintiff says: "The Parole Board did not promote Ms. Sullivan-Robinson to the vacant positions, even going as far as bringing in a person outside of the Agency to fill those positions.  After that employee was ultimately terminated, and the Plaintiff again applied for the promotion, the Parole Board, without conducting interviews, hired another person for that position instead of promoting Plaintiff." *Id*. at ¶ 12.  Plaintiff further alleges that during the time

she was grieving Wallace's inappropriate conduct she applied for a promotion. She claims Wallace and two other commissioners conspired to deny her the promotion; one of the commissioners allegedly made the comment that a single mother with two small children was not a suitable candidate. *Id.* at ¶ 23. She alleges the employee who was promoted had less experience and was "significantly less qualified than Plaintiff." *Id*. at ¶ 26.

The commissioners assert plaintiff's claims against them in their individual capacities are barred by Ark. Code Ann. § 19-10-305(a), which provides: "Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment."

Defendants argue there is no allegation that any of the individual-capacity defendants have liability insurance that would cover the cost of any judgment rendered in this case, and that the alleged conduct in denying plaintiff the promotions is not malicious.

Arkansas law says the following about "malice:"

> It is true that malice is not necessarily personal hate. It is rather an intent and disposition to do a wrongful act greatly injurious to another. Malice is also defined as the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent. . . . A conscious violation of the law . . . which operates to the prejudice of another person. A condition of the mind showing a heart . . . fatally bent on mischief.

*Simons v. Marshall*, 255 S.W.3d 838, 842-3-43 (Ark. 2007)(internal citations and quotations omitted). Plaintiff asserts she has alleged sufficient facts to show that the individual commissioners acted with malice and such conduct falls outside the protection of §19-10-305(a).

Viewing the facts in the light most favorable to plaintiff, the Court finds plaintiff has stated a plausible claim that the individual defendants acted with "an intent to do a wrongful act greatly injurious to another," intentionally did "a wrongful act without just cause or excuse," or consciously violated the law.

**Conclusion**

IT IS THEREFORE ORDERED that defendants' motion to dismiss [docket entry 7] is granted in part and denied in part. Plaintiff's claim for sexual harassment under § 1983 against Wallace is dismissed.[1] The motion is denied as to plaintiff's ACRA claims of retaliation against the individual defendants.

DATED this 28th day of July, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[1] Because the Court finds plaintiff fails to state a claim for hostile environment sexual harassment against Wallace under § 1983, plaintiff's Title VII claim against the Board for sexual harassment fails as well.