IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LAQUISHIA SULLIVAN-ROBINSON,     *
     *
     Plaintiff,     *
     *
vs.     *     No. 4:11CV00140 SWW
     *
ARKANSAS PAROLE BOARD; LEROY     *
BROWNLEE, In His Individual Capacity     *
Only; ABRAHAM CARPENTER; RICHARD     *
MAYS, JR.; JIMMY WALLACE; JOE     *
PEACOCK; JOHN FELTS; CAROLYN     *
ROBINSON, In Their Individual and     *
Official Capacities; and RICHARD BROWN,     *
JR., In His Official Capacity Only;     *
     *
     Defendants.     *

**Memorandum Opinion and Order**

Before the Court is defendants' motion for summary judgment to which plaintiff responded. Defendants filed a reply to the response. For the reasons stated below, the Court finds the motion for summary judgment should be granted.

**Background[1]**

Plaintiff LaQuishia Sullivan-Robinson, a black female, began working for defendant Arkansas Parole Board ("the Board") in April 2006 as a Secretary I. On her one-year service date, she was promoted automatically to a Secretary II position and received an increase in pay. During her employment with the Board, she received pay increases at least annually. Before working for the Board, plaintiff held various jobs after her graduation from high school in 1996.

---

[1]These background facts are taken mainly from defendants' statement of undisputed facts which plaintiff did not controvert. *See* docket entries 26 & 32.

In the Fall of 2007, plaintiff applied for leave under the Family and Medical Leave Act ("FMLA") due to pregnancy complications.  According to plaintiff, she filed a complaint with the United States Department of Labor ("DOL") sometime before early November 2007 because the Board did not want to apply her FMLA leave retroactively.  The Board took no disciplinary action against plaintiff for missing work due to her medical condition but did try to suspend plaintiff for failure to pay her portion of her health insurance premiums.  According to plaintiff, the DOL found that the Board should have made her FMLA request retroactive and paid her for the days she was suspended.  Defendants assert that only the chairman of the Board, separate defendant Leroy Brownlee, knew about plaintiff's 2007 FMLA request or appeal to the DOL.[2]

Plaintiff alleges that after she returned to work, she applied for at least two promotions. Sec. Am.Compl. (doc. 24)  at ¶ 12.  According to defendants, in November 2007, an Administrative Assistant I position was awarded to Robin Radford.  There is no indication in the record that plaintiff applied for that position.  Plaintiff states she was already performing the Administrative Assistant I work before she went on FMLA leave, and that when she returned from her leave, Radford was sitting at plaintiff's desk and performing her job duties.[3]  Plaintiff states that in 2008 she competed for a second Administrative Assistant I position, which was awarded to Melissa Haney in June of that year.  The positions awarded to Radford and Haney

---

[2]Defendants note that during the pendency of this lawsuit, Chairman Brownlee retired and was replaced by John Felts, who was a member of the Board and a defendant in this lawsuit.  Pursuant to Fed.R.Civ.P. 25(d), Richard Brown, Jr., who was appointed to fill the vacancy caused by Brownlee's retirement, is substituted for Brownlee in his official capacity only.  *See* Defs.' Mot. Summ. J. (doc. 31) at n.1.

[3]Pl's. Statement of Facts (doc. 40) at 3.

carried a minimum qualification of a bachelor's degree or a high school diploma plus one year of college coursework plus four years' specialized or related experience.  The job description provided that: "[o]her job related education and/or experience may be substituted for all or part of these basic requirements upon approval of the Qualifications Review Committee."  Ms. Radford had a bachelor degree in Criminal Justice with a minor in Psychology, and Haney had a bachelor degree in Psychology with a minor in Criminal Justice.  Plaintiff reported having a high school diploma.

In June of 2009, plaintiff's position title changed to Administrative Specialist 2 as a part of a statewide job reclassification.  In the statewide classification, the Administrative Assistant I position was changed to Administrative Specialist 3.  Plaintiff competed for an Administrative Specialist 3 position, which was awarded to Michelle Kordsmeier on August 24, 2009.  The minimum education requirements for the position were formal education equivalent to a high school diploma plus one year specialized training plus three years experience in specialized or related field.  Ms. Kordesmeier had bachelor degrees in both Psychology and Professional Studies in Criminal Justice.  She also had related work experience.  In June of 2010, another Administrative Specialist 3 position opened when Kordsmeier left.  However, no one was interviewed for that position and it was never filled because it was eliminated so that two other positions at the Board could be upgraded.  Lateresa Smith, who already was an Administrative Specialist 3, assumed most of the duties of Kordsmeier's poisiton.

On September 2, 2010, plaintiff filed a grievance alleging that she had been sexually harassed by Board Commissioner and separate defendant James Wallace.  Plaintiff's allegations that Wallace made inappropriate comments to her were investigated by Commissioner and

separate defendant Richard Mays, Jr., who was the Board's grievance officer and an attorney.

In September 2010, an Administrative Specialist 3 position opened and two of the candidates for the position were plaintiff and her co-worker, Delores Jones.  Ms. Jones was a two-plus year employee of the Board, working as an Administrative Specialist 2.  Before coming to the Board, Jones had worked for 24 years as a certified unit secretary at St. Vincent Infirmary in Little Rock, where she was responsible for a variety of clerical, scheduling, policy interpretations, and family/staff support duties.  The candidates for the position were interviewed by a four-member panel made up of separate defendant Commissioners Carolyn Robinson and Joe Peacock; Administrative Analyst Melissa Haney, who previously worked in the position; and Administrative Specialist 3 Tamara Salaam, who would supervise the person selected.

According to plaintiff, Salaam told her that her choice was either Jones or plaintiff.  The choice of the other three interviewers was Jones.  Ms. Haney said she thought the person for the position needed to be a self-starter and, in her opinion, plaintiff was not a self-starter.  She also said she was concerned about plaintiff's attitude toward people which Haney thought was not as professional as it needed to be for the position.  Ms. Haney explained that the successful candidate would have to communicate with many people, including inmates and their families, victims and their families, attorneys, and the Governor's office. Ms. Haney also said Jones gave a very good interview and acted as if she was interested in the position itself not just seeing it as an opportunity to move up.  Ms. Haney did say plaintiff's interview went very well. Commissioner Peacok said he thought Jones gave the best and most professional interview by far, asking good questions, answering questions well, knowing what the position was about, and expressing enthusiasm for the job.  Commissioner Robinson said she selected Jones because she

came to the interview very well prepared, asked questions, and showed genuine interest in learning the job and doing it well.  According to her resume, while working at the hospital for more than twenty years, Jones was responsible for "being a communicator which serves as a liaison between the patients, their families, and the hospital staff."[4]  Commissioners Robinson and Peacock presented to the full Board  the panel's recommendation that Jones be awarded the position and the Board accepted the recommendation.

On October 14, 2010, plaintiff learned that the position had been awarded to Jones. Commissioner Peacock said that after the promotion was announced, he visited with Amber Baldwin, another unsuccessful applicant for the position.  He said he and Baldwin talked quite a bit at work about her family.  He told Baldwin that he knew that when an employee has children it is often hard to have good attendance and that the position was a busy and demanding one and needed someone with good attendance.  He says he had no knowledge about plaintiff's family situation or whether she had children.

Plaintiff filed a grievance over not getting the position, and Commissioner and separate defendant Abraham Carpenter investigated the grievance.  He notified plaintiff of his findings in a memo dated January 13, 2011.  He found that the hiring of Jones "was based on the qualifications and the interview provided by each applicant."[4]  Plaintiff did not pursue the grievance any further.

As to plaintiff's sexual harassment grievance, Mays notified plaintiff on October 28, 2010, that Wallace had attended sexual harassment training.  He thanked plaintiff for bringing

---

[4]Defs.' Mot. Summ. J. (doc. 31), Ex. 1 (Gillerson Decl. at ¶ 9 and Ex. G to Decl.).

[4]*Id.*, Ex.4 (Abraham Decl., Ex. A).

the matter to the Board's attention and encouraged her to let the Board know immediately if she experienced similar behavior so that prompt action could be taken.  Plaintiff appealed Mays's resolution of her sexual harassment claim to Brownlee.  On November 12, 2010, Brownlee notified plaintiff that he agreed with the resolution of her claim.  He also told her that he had no authority to grant her the relief she sought - removal of Wallace from the Board - because Wallace was appointed by the Governor and confirmed by the State Senate.  Plaintiff appealed Brownlee's decision to the State Employee Grievance Appeals Panel, which denied her grievance because the relief she sought was beyond the control of agency management.

On November 1, 2010, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment.  The EEOC issued a right-to-sue letter on November 9, 2010.  On February 14, 2011, plaintiff filed a charge of discrimination with the EEOC alleging she had not received the October 2010 promotion awarded to Jones in retaliation for having filed an internal grievance and charge of sexual harassment with the EEOC.

On July 1, 2011, following Brownlee's retirement, John Felts became Chairman of the Board, having served as a Commissioner for fourteen years.  When he became chairman, Felts developed a new organization chart.  He said he believed that in the past there had been a problem with employees not following the chain of command, and one of his goals was to make sure that each employee knew who his or her supervisor was.  Chairman Felts met with plaintiff and her coworkers from the Revocation Section on July 11, 2011, and introduced Jim Williams as their supervisor.  Chairman Felts instructed them to report directly to Williams.

On July 20, 2011, plaintiff filled out a Request for Family and Medical Leave and

presented it to Williams.  Mr. Williams told plaintiff he would get back with her later in the day.

Plaintiff had a Certification of Health Care Provider in her purse, which had been completed by

her physician two days earlier.  Plaintiff personally stamped each page of the certification

"Confidential."  Mr. Williams met with plaintiff later that day and told her she would have to

provide a medical certification form with her request before it could be processed.  He also gave

plaintiff a memo explaining this.  Plaintiff refused to provide Williams with the certification.

She testified:

> [Williams] handed me this letter like a memo letter saying that he's seen my
> acknowledgment form. He's aware that I'm applying for FMLA, but he needs my
> doctor's certification.  And then, at that point, I set the letter down on the desk,
> and I was like, 'You don't need the doctor's certification.'  I was like, 'The
> acknowledgment form is just signing off acknowledging that I applied for FMLA.
> The approving party is the Director of the Board and HR.  So, therefore, I just
> need to get you the acknowledgment form to sign off on me like you would sign a
> timesheet, and then, give it back to me, and then, I attach the doctor's certification
> and take it over to HR.'

When Williams told plaintiff during the meeting that she must provide the certification or

her FMLA request could not be processed, plaintiff told him "that he didn't need the . . .

certification to fill the request form,' and 'okay that's fine I'll just contact the Labor Board."

During the meeting, which also was attended by Board Hearing Examiner Carol Bohannan,

plaintiff said, "Okay.  Is that it,' '[i]s there anything else?"  Ms. Bohannan testified she

considered plaintiff insubordinate; her voice was raised and she was pointing her finger.  Mr.

Williams described plaintiff's behavior as rude, discourteous, and insubordinate.

Another meeting was held still later in the day with plaintiff, Felts, Williams, and

Bohannan.  The meeting was recorded.  During the meeting, Williams recommended that

plaintiff be suspended for two days for insubordination pursuant to the Board's Employee

Manual. Mr. Williams presented a letter to plaintiff outlining the disciplinary action and asked her to sign it. Plaintiff responded that she "ain't signing anything. . . . [a]nything else?" Mr. Williams then pronounced plaintiff not "supervisable" due to her insubordinate attitude and recommended immediate termination. Chairman Felts, however, directed that they follow through with the two-day suspension and notified plaintiff they would have a briefing when she returned.

Plaintiff then asked Williams if he had her paperwork for her medical situation and Williams responded that she had not provided documentation to him. Plaintiff told Williams his request was against the law and repeatedly told him she did not have to give it to him. She told Felts she would give him the certification but would not give it to Williams. Chairman Felts explained to plaintiff that she needed to deal with her supervisor in the right tone and not tell him in a disrespectful manner that she did not have to do anything. Plaintiff responded that if she did not get respect she was not giving any. After plaintiff told either Williams or Felts seven times during the approximately three-minute meeting that she did not have to give Williams the certification, Felts ended the meeting.

Plaintiff previously had been disciplined for insubordination. In July 2008, she received a three-day suspension for insubordination for her lack of cooperation with co-workers and failing to perform work duties as instructed. As a result of the insubordination, the Board sent plaintiff to training with the intention of "enhancing her skill and causing acute awareness of her responsibilities as an employee," and to "cause her to realize that we all must answer to someone and when an instruction is given it is to be followed to the best fo her ability."[5]

_____

[5]*Id.*, Ex.1 (Gillerson Decl. at ¶ 12 and Ex. N to Decl.).

Plaintiff was scheduled to return to work on July 25 but she called and notified Williams she would be out for "personal" reasons. Plaintiff returned to work on July 26 and filed a grievance challenging her suspension. Plaintiff met with Williams and Felts on July 27, at which time Felts, having reviewed her personnel file, notified plaintiff in person and in writing that she would be placed on probation for six months, during which time "[a]ny violations of agency rules, policies and procedures [could] result in [her] immediate termination."[6]

On July 27, Williams e-mailed plaintiff "in an attempt to clarify [her] request for FMLA that [she] signed on July 20."[7] In the email, Williams instructed plaintiff that she had fifteen days to submit her certification of illness to him so that he could evaluate her entitlement to the requested FMLA leave. On August 2, plaintiff emailed Williams and Felts, notifying them that she did not feel comfortable turning her personal medical information in to anyone other than personnel.

Plaintiff was absent from work on August 1, 2, and 3. In a letter dated August 3, Felts notified plaintiff that she had exhausted all of her annual, sick, holiday and birthday leave and was in a leave without pay status as of 2:30 p.m. that day. He also wrote:

> You have requested leave under the . . . (FMLA) and your eligibility for such leave has been established, but you have failed to provide the documentation necessary to determine your entitlement to leave. You were previously notified in writing that you would have fifteen days to submit the physician's certification to your direct supervisor. The deadline for the submission of the documentation is the close of business on August 12, 2011.[8]

When plaintiff returned to work on August 4, she attempted to give all of her FMLA

---

[6]*Id.*, Ex. 16 (Robinson Dep. at 81 and Dep. Ex. 22); Doc. 49 (Ex. A to Supp. Decl. of Felts).

[7]*Id.*, (Dep. Ex. 21).

[8]*Id.* (Dep. Ex. 23).

documentation, including her medical certification, to Fiscal Support Supervisor Norma

Gillerson, whose various job duties included handling personnel documentation.  Ms. Gillerson

refused the documentation, providing plaintiff with a note that read: "Mr. John Felts came into

my office and asked me if LaQuishia Robinson gave me any documentation.  I told hm no.  He

told me if LaQuishia gave me any documentation to not to accept it and tell her to give it to her

supervisor."[9]

On August 4, Felts terminated plaintiff's employment.  He explained in a letter that he

had learned plaintiff attempted to turn in a medical certification to Gillerson after he instructed

plaintiff to turn it into Williams, her immediate supervisor.  The letter said:" Your disobedience

of my directive constitutes defiance of my authority and insubordinate conduct.  Due to the fact

that you are currently on probation for insubordinate conduct, your employment with the

Arkansas Parole Board is terminated immediately."[10]  Chairman Felts testified he contacted all

the Board members except Wallace and told them he recommended terminating plaintiff.[11]

On August 8, 2011, plaintiff filed a charge of discrimination with the EEOC alleging she

was suspended and subsequently terminated due to her race and in retaliation for filing two

previous charges of discrimination.  On August 6, 2011, the EEOC issued a right-to-sue letter.

Plaintiff also complained to the DOL regarding her termination.  It notified plaintiff in a letter

dated August 26, 2011,  that "[n]o further action will be taken on your behalf by the Department

---

[9]*Id*., (Dep. Ex. 24).

[10]Defs.' Statement of Undisputed Facts (doc. 33), at ¶ 53.

[11]Defs.' Reply to Pl's. Resp. to Defs.' Mot. Summ. J. (doc.47), Ex. 7 (Felts Dep.).

[of Labor]."[12]

On February 15, 2011, plaintiff filed the lawsuit now before the Court alleging claims of sexual harassment and retaliation and violation of the Family and Medical Leave Act against the Board and the commissioners.  She filed an amended complaint on April 15, 2011.  On July 28, 2011, the Court dismissed plaintiff's claim of sexual harassment against separate defendant Wallace.  Plaintiff filed a second amended complaint on December 2, 2011, adding claims of race discrimination and retaliation in connection with her suspension and termination in July and August 2011.  On July 13, 2012, defendants filed a motion for summary judgment.

**Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v.  Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed

---

[12]Defs.' Mot. Summ. J. (doc. 31), Ex. 16 (Robinson Dep. at 82 and Dep. Ex. 27).

fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable

jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49

F.3d 399, 401 (8th Cir. 1995).  The inferences to be drawn from the underlying facts must be

viewed in the light most favorable to the party opposing the motion.  *Matsushita,* 475 U.S. at 587

(citations omitted).  "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will

not be counted."  *Id.*

### Discussion

Plaintiff alleges claims of sexual harassment and retaliation under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. §2000(e) *et seq*. and 42 U.S.C. §1983; retaliation and

interference in violation of the Family and Medical Leave Act; and violation of the Arkansas

Civil Rights Act ("ACRA").   Defendants move for summary judgment on the grounds that

plaintiff cannot establish race discrimination or retaliation under Title VII, § 1983, or the ACRA;

that plaintiff's FMLA claim against the Board is barred by the doctrine of sovereign immunity;

that the statute of limitations bars her FMLA retaliation claim regarding the 2007 and 2008

promotions;[13] and that her FMLA retaliation/interference claims against Felts are unsupported by

the evidence.   Finally, defendants claim they are entitled to qualified immunity.

---

[13]Plaintiff states in her response that the only failure to promote claims she is pursuing concern
the 2009 and 2010 Administrative Specialist 3 vacancies.  *See* Pl's. Br. in Opp. to Mot. Summ. J. (doc.
42) at 17 n.2.

1.  Suspension/Termination

Plaintiff claims Felts suspended and then terminated her because of her race.  She also claims her suspension and termination were in retaliation for filing charges of discrimination with the EEOC, filing the federal lawsuit, and requesting medical leave.  She brings these claims pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, the FMLA, and the ACRA.[14]   In the absence of direct evidence, a plaintiff asserting a claim of discrimination under Title VII has the initial burden of establishing a *prima facie* case.  A plaintiff establishes a *prima facie* case of race discrimination by showing that: (1) she is a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) she has facts that give rise to an inference of discrimination.  *Takele v. Mayo Clinic,* 576 F.3d 834, 838 (8th Cir. 2009).  A plaintiff may establish the fourth prong by producing facts that similarly situated employees outside the protected class were treated differently.  *Id.  See also Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853-4 (8th Cir. 2012).

If the plaintiff establishes the elements of a *prima facie* case, then the employer has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action.  *McDonnell Douglas Corp.,* 411 U.S. 792,  802 (1973).  Once the employer satisfies its burden of production, any rebuttable presumption of discrimination disappears, and the plaintiff must prove that the proffered reasons are a pretext for discrimination.  *Id.*  The burden of proof remains at all times with the plaintiff to establish that she was the victim of unlawful

---

[14]The Eighth Circuit analyzes Title VII, § 1983, and ACRA claims under the same framework. *Humphries v. Pulaski County Special Sch. Dist.*, 580 F.3d 688, 692  n.3 (8th Cir. 2009).; *Clegg v. Arkansas Dept of Correction*, 496 F.3d 922, 926 (8th Cir. 2007).  FMLA retaliation claims are evaluated under the *McDonnell Douglas* burden shifting framework as well.  *Wierman v. Casey's General Stores*, 638 F.3d 984, 999 (8th Cir. 2011).

discrimination.  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993).  Defendants argue plaintiff cannot establish that she was meeting her employer's legitimate job expectations, and that there is no evidence that similarly situated employees outside her protected class were treated differently.

Plaintiff says that Amber Baldwin, a white employee, who faced criminal charges for hot checks, was treated more leniently than plaintiff.  According to the evidence, Brownlee suspended Baldwin in 2011 because of the charges but then allowed her to return when she paid her fines, with the financial help of Wallace and Peacock.  After Felts became chairman in July 2011, hot check warrants were issued against Baldwin, and when she did not take steps to dispose of the charges, Felts terminated her in June 2012.  Plaintiff argues Baldwin's conduct was far more egregious than hers and yet Felts's initial action was to allow Baldwin to remain employed.

The Court finds plaintiff fails to establish that she was meeting the legitimate job expectations of her employer as the evidence is clear that her disrespectful and insubordinate behavior violated Board policy. The Court also finds plaintiff fails to show that she was treated differently than a white employee who engaged in the same conduct.  Plaintiff herself acknowledges that the conduct was not the same: she describes Baldwin's offense as an ethical violation while hers was insubordination.  In *Chappell v. Bilco Co.*, 675 F.3d 1110, 1119 (8th Cir. 2012), the Eighth Circuit held that a plaintiff proves the fourth element of her *prima facie* case by showing comparators are similarly situated in all respects.  "To be similarly situated, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing

circumstances." *Wierman v. Casey's General Stores,* 638 F.3d 984, 994 (8th Cir. 2011)(internal citation and quotation omitted).

Even if the evidence establishes a *prima facie* case, plaintiff's race discrimination claim fails as a matter of law due to the lack of evidence of pretext.  Defendants assert that plaintiff was suspended and then terminated for insubordination.  Plaintiff must discredit that assertion and show that circumstances permit the reasonable inference that race was the real reason.  Plaintiff argues defendants' reason is not credible because Felts deviated from Board policy by requiring her, without prior notice, to submit her medical certification to her immediate supervisor.  Plaintiff also argues that the Board's comparatively lenient treatment of Baldwin raises an inference that the decision to terminate plaintiff was motivated by race.

The Court finds plaintiff fails to produce evidence that shows there is a genuine issue of fact as to the legitimacy of the reason given by her employer for her termination.  Insubordination and violation of company policy are legitimate reasons for termination.  *Putnam v. Unity Health System*, 348 F.3d 732, 736 (8th Cir. 2003).  The evidence shows that plaintiff's suspension was based upon her disrespectful and insubordinate attitude.  Separate defendant Felts terminated her after she attempted to turn in her medical certification to Gillerson after Felts specifically told her to give it to Williams.  Plaintiff argues that the employee manual does not require an employee to submit her medical certification in support of an FMLA request to her immediate supervisor.  She complains that Felts changed the process.  Regardless, the record is clear that plaintiff was disrespectful and insubordinate in refusing to follow the directives of Felt to give a copy of her documentation to Williams.   In addition, plaintiff's assertions of less favorable treatment fail to establish a genuine issue of material fact as to pretext.  The Court

finds plaintiff's claim of race discrimination should be dismissed.

Plaintiff asserts her suspension and termination were in retaliation for filing two previous charges of discrimination with the EEOC and for filing her present lawsuit.  She also claims she was suspended in retaliation for asserting her FMLA rights.  In order to prove her claim, plaintiff first must establish a *prima facie* case by showing that (1) she engaged in protected conduct, (2) she was subjected to an adverse employment action, and (3) there is a causal connection between the protected conduct and the adverse action.  *Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980, 985-86 (8th Cir. 2010).  Even assuming plaintiff can establish a *prima facie* case, defendants argue plaintiff offers no evidence that their stated reason for suspending and then terminating plaintiff was pretextual.

The Court finds plaintiff fails to present evidence to show that her EEOC charges, lawsuit, and FMLA request were a determining factor in Felts's decision.   For the same reasons the Court finds Felts's decision to suspend and terminate plaintiff's employee was not a pretext for race discrimination, the Court finds plaintiff fails to establish a genuine issue of fact that his decision was retaliatory.

2.  Denial of Promotion in October 2010

Plaintiff alleges she learned on October 14, 2010, that she was not selected for the Administrative Specialist 3 position.  Plaintiff claims defendants declined to award the position to her in retaliation for filing the sexual harassment grievance in September 2010.  She claims she was more qualified than Jones because she had actual on-the-job experience.  Defendants argue plaintiff cannot establish an issue of fact as to whether there was a causal connection between the filing of the grievance and not getting the promotion.  They also assert there is no

evidence from which a reasonable jury could find that the Board's legitimate, non-discriminatory reason for awarding the position to Jones was a pretext for unlawful retaliation.

In proving a causal connection at the *prima facie* case phase of a retaliation claim,

the plaintiff must show that the protected conduct was a determinative - not merely a motivating - factor in the employer's adverse employment decision. If the plaintiff succeeds, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action. If the defendant does so, the plaintiff can still prevail on a final step of the *McDonnell Douglas* analysis by proving, by a preponderance of the evidence, that the reasons proffered by the employer are merely pretext for discrimination.

*Tyler*, 628 F.3d at 985-6 (internal quotations and citations omitted).

Plaintiff filed a grievance on September 2, 2010, alleging Wallace sexually harassed her. Two Board Commissioners, Carolyn Robinson and Joe Peacock, were on the four-person panel that interviewed plaintiff and Jones for the Administrative Specialist 3 position on October 6, 2010. The full Board voted to award the position to Jones on October 15, 2010. Plaintiff argues that Peacock is a friend of Wallace and Wallace was upset about plaintiff's accusations against him. She asserts that Peacock entered the interview process with a bias against her and that Peacock admitted that plaintiff never had much of a chance with him. Plaintiff argues that Peacock is the only member of the committee who said that she interviewed poorly and his bias against her tainted the decision-making process. She said Tamara Salaam, another committee member told her she recommended both plaintiff and Jones for the position. Melissa Haney stated plaintiff's interview went very well. Plaintiff asserts she was objectively more qualified for the position because she had on-the-job experience, and the subjective reasons Robinson gave for recommending Jones were too general to establish that Jones was the more qualified candidate.

Defendants argue that plaintiff's allegation that Peacock tainted the interview panel

against her and did not recommend her for the position because he was upset with her for accusing his friend of sexual harassment are sheer speculation.  They assert that any bias Peacock may have had against plaintiff was because of what he perceived as her poor work ethic.  He testified that when he would go by plaintiff's desk, two or three times a day, she was never there, and he never saw her do any work except her fix her fingernails and talk on the telephone.  Ms. Haney testified that she did not think plaintiff would be a good candidate for the position because plaintiff is not a "self-starter" and her attitude toward people "is sometimes not as professional as it should be."  Defendants argue the evidence establishes that all panel members supported Jones being awarded the position.

Plaintiff's argument that she was more qualified because she had on-the-job experience is unpersuasive.  In *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 793 (8th Cir. 2011), the Eighth Circuit explained that the fact that a plaintiff "may have been capable of filling the role of [the position], or that [s]he has specific strengths as a candidate, does not show pretext."  Further, although plaintiff had worked at the Board for over four years and Jones for only two years, it is undisputed that Jones had over twenty years of experience with another employer that defendants considered very important.  In addition, Haney, who had been working in the position, felt that Jones was a self-starter and plaintiff was not.  "To support a finding of pretext, [the applicant] must show that the [employer] hired a *less* qualified applicant."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1049 (8th Cir. 2011)(quotations omitted and emphasis in original).  *See also Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir.1988) ("The mere existence of comparable qualifications between two applicants ... alone does not raise an inference of racial discrimination.").

The Court finds plaintiff fails to make a *prima facie* case because she does not establish a causal connection between her complaint of sexual harassment and not being selected for the position.  Further, no reasonable jury could find that Jones was not at least as qualified for the position as plaintiff.  The Court further finds plaintiff fails to present evidence to show a genuine issue of fact that defendants' reason for choosing Jones over plaintiff was motivated by retaliation.

### 3.   Denial of Promotion in  2009 in Violation of the FMLA

Plaintiff alleges defendants denied her a promotion in 2009 in retaliation for filing a complaint with the DOL over a FMLA request made in 2007.[15] A FMLA claim of retaliation is evaluated under the *McDonnell Douglas* framework.  *Wierman*, 638 F.3d at  999.  To establish a *prima facie* case, plaintiff must show that she engaged in protected conduct, she suffered a materially adverse employment action, and the materially adverse action was causally linked to the protected conduct.  *Id.*  Plaintiff attempts to establish a causal connection between her FMLA complaint and the Board's decision to select Kordsmeier for the 2009 Administrative Specialist 3 vacancy.  She argues that Robinson, who is on the Board's hiring/personnel committee and chaired it in 2009, had to have been aware of plaintiff's FMLA complaint when she gave Kordesmeier a much higher score than plaintiff.  Defendant Robinson testified, as did all the other commissioners except Brownlee, that she was unaware plaintiff had made a complaint regarding

---

[15]In her response to defendants' motion for summary judgment, plaintiff claims that defendant Robinson failed to promote her on the basis of race.  As defendants point out, plaintiff made no race discrimination claim in her Second Amended Complaint regarding the 2009 Administrative Specialist vacancy and did not mention race in her deposition when asked about why she felt she did not get the promotion. To the extent plaintiff is making a claim of race discrimination in connection with the position awarded to Kordesmeier in 2009, the Court finds plaintiff presents no evidence that defendants' reasons were a pretext for race discrimination.

FMLA leave.  Chairman Felts testified that Chairman Brownlee dealt with a lot of issues by

himself.  Plaintiff submits no credible evidence that Robinson was aware of the 2007 FMLA

complaint.

Defendants state they selected Kordsmeier because she possessed two bachelor's degrees,

including one in the field of Criminal Justice.   She also had customer service and clerical work

experience.  Plaintiff complains that the position does not require a college degree or college

course work.  The Court find plaintiff has come forth with no credible evidence to support her

claim that her FMLA complaint in 2007 was a determining factor in defendants' decision not

promote her in August 2009.  *See Barber, supra*; *Torgerson, supra*.

4. FMLA Interference Claim

In addition to her claim that defendants retaliated against her for seeking FMLA leave,

plaintiff also alleges defendants "interfered with the exercise of her right to leave under the

FMLA."  Sec. Am. Comp., ¶ 41.  She says she "performed every act required under the law to

assert her right to medical leave . . . [that] the FMLA does not require [her] to give her immediate

supervisor a Certification of Illness . . [and that] [s]he presented the required documentation to

Gillerson, but was rebuffed."  *Id.*   Plaintiff argues that since she began working at the Board, she

followed the Board's practice for seeking FMLA leave, which was to present a completed leave

form to her supervisor for his or her signature and then to take that form plus the completed

medical certification to Gillerson.  She complains that when Williams and Felts insisted that

plaintiff provide Williams with her completed medical certification form as well as her request for

leave form for review, they were departing from previous Board practice.  Plaintiff asserts she

had a good faith belief that Felts's new policy was unlawful.

20

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights provided by the statute. 29 U.S.C. § 2615(a)(1). An employee proceeding under an "interference" or "entitlement" claim[16] has the initial burden of proof to show that she was entitled to the benefit denied. *Bellato v. Comcast Corp.*, 676 F.3d 768, 772 (8th Cir. 2012).  Citing *O'Reilly v. Rutgers*, 2006 WL 141895 (D.N.J. Jan. 19, 2006) (upheld 223 Fed.Appx. 131, 2007 WL 1231708 (3rd Cir. 2007)), defendants argue the FMLA does not give plaintiff the right to decide to whom to provide her medical certification.  Because she refused to provide the required documentation as directed, plaintiff was not entitled to FMLA benefits.

In *O'Reilly*, the employee was willing to provide her medical certification to licensed medical professionals at Rutgers University but not to her department supervisor or manager. She was fearful that her confidential medical information might be wrongfully disclosed. *Id.* at *6.  When she did not submit her certification as directed, she was fired.  The issue before the court was "whether an employee claiming FMLA leave can dictate which individuals within her company may review the medical certification for supporting her claim of leave." *Id.* at *1.  The court said:

> Section 2613(a) of the FMLA authorizes employers to require that requests for leave be supported by a certification but does not specify who within the employing organization is authorized to request and review such a certification. In fact, the term 'employer,' as defined by the FMLA, 'means any person engaged in commerce ... *includ[ing] any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.'* 29 U.S.C.A. § 2611

---

[16]In *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012), the court describes an "entitlement" claim as one where an employee asserts the denial of a benefit to which she is entitled under the statute.  The court described the other two types of claims as retaliation and discrimination. *See also Bone v. G4S Youth Servs., LLC,* 686 F.3d 948 (8th Cir. 2012) (FMLA authorizes two types of claims: interference and retaliation).

(emphasis added). This definition may certainly encompass departmental managers and supervisors who function in an administrative capacity, as well as individuals in an office of employee relations or human resources. *See, e.g., Cash v. Smith,* 231 F.3d 1301, 1303-04 (11th Cir.2000) (print shop supervisor in the graphics department of power company was responsible for processing FMLA paperwork in order to determine whether employee qualified for FMLA leave); *Dodge v. Trustees of the National Gallery of Art,* 326 F.Supp.2d 1, 6 (D.D.C.2004) (gallery policy provided that employee's immediate supervisor was the primary and initial contact for employees requesting FMLA leave).

*Id.* at *4.

Plaintiff asserts her case is distinguishable because O'Reilly was terminated because her leave had run out, not because she refused to provide her medical certification to her employer. Further, plaintiff argues O'Reilly was terminated after the time for submitting her medical certification had lapsed but plaintiff was fired eight days before a similar deadline, and the two cases involved different levels of supervision, *i.e.* plaintiff offered to give her certification to Felts, Williams's direct supervisor whereas O'Reilly was unwilling to provide her certification to her department head, who was not her immediate supervisor.  Plaintiff also argues that whether Felts could require her to give her certification personally to Williams is not relevant; the issue is whether defendants interfered with her FMLA rights by terminating her before the deadline for presenting her certification to Williams..[17]

The evidence reflects that on July 27, 2011, Williams notified plaintiff that she had fifteen days to provide her medical certification to him.[18]  By letter dated August 3, 2011, Felts told plaintiff she had until August 12, 2012, to submit the certification to Williams.[19]  On August 4,

---

[17]Pl's. Br. in Supp. of Resp. to Mot. Summ. J. (doc. 42) at 20.

[18]Defs.' Mot. Summ. J. (doc. 32), Ex. 16 (Robinson Dep. at 81 and Dep., Ex. 21).

[19]*Id*., Robinson Dep. Ex. 23.

2011, plaintiff attempted to give the certification to Gillerson in direct defiance of Felts's directive to give it to Williams.  Plaintiff was terminated for defying Felts' directive to submit the certification to Williams.

"Interference with FMLA rights includes 'manipulation by a covered employer to avoid responsibilities under FMLA.  Although an employee 'can prove interference with a FMLA right regardless of the employer's intent,' the FMLA 'is not a strict-liability statute.'" *Chappell*, 675 F.3d at 1114 (internal citations omitted).  "[A]n employer who 'interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights.'" *Estrada v. Cypress Semiconductor (Minnesota) Inc.*, 616 F.3d 866, 870 (8th Cir. 2010).  However, "[a]n employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave." *Id.* at 871.  "If the employer can prove that it would have terminated the employee had the employee not exercised FMLA rights, the employer will not be liable." *Ballato v. Comcast Corp.,* 676 F.3d 768, 772 (8th Cir.2012).

The Court finds plaintiff fails to establish a genuine issue of material fact that Felts unlawfully interfered with her rights under the FMLA.  The Court finds the *O'Reilly* decision persuasive regarding the legality of  Felts's policy that all FMLA documentation initially be presented to the employee's direct supervisor.  The Court finds plaintiff fails to submit evidence that she was entitled to FMLA benefits.  There is no factual dispute that in spite of repeatedly being told to submit the medical certification to Williams, plaintiff attempted to give it to Gillerson, and that plaintiff was terminated for insubordination.

**Conclusion**

23

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [docket entry 31] be and is hereby granted.  Judgment will be entered for defendants.

DATED this 29TH day of October,  2012.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE